## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **JOSHUA CHAMPION**, | : | |
| | : | Case No. 2:21-cv-10814-JXN-JBC |
| *Plaintiff*, | : | |
| | : | |
| v. | : | DEMAND FOR JURY TRIAL |
| | : | |
| **THE CREDIT PROS INTERNATIONAL** | : | |
| **CORPORATION**, a New Jersey corporation, | : | |
| and **JASON KAPLAN** | : | |
| | : | |
| *Defendants*. | : | |

### FIRST AMENDED COMPLAINT - CLASS ACTION

On August 5, 2022, the Court dismissed this matter and granted Plaintiff Joshua Champion ("Champion") fourteen days to file an amended complaint. (Dkt. No. 9) Pursuant to the Court's order, Champion files this amended complaint.

Champion files this amended complaint as a class action. Champion would have initially filed this as a class action, but at the time of his original filing there was already a class action against Credit Pros for the same violations of the Telephone Consumer Protection Act. (See, *Warren v. The Credit Pros International Corporation*, M.D. F.L.A. 3:20-cv-00763-TJC-MCR). Based on comity and the first-to-file rule, Champion filed this matter as a single plaintiff action. However, the *Warren* matter has been settled and dismissed. (*Id.* at Dkt No. 69 and 72). Because there are no longer duplicative or competing class actions, Champion respectfully amends this complaint as a class action.

### JURISDICTION AND VENUE

1.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the TCPA which is a federal statute.

1

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a significant portion of the facts giving rise to this lawsuit occurred in this District.

## PARTIES

3.      Joshua Champion is an individual and is a resident of Washington, D.C.

4.      Credit Pros International Corporation ("Credit Pros") is a New Jersey corporation headquartered in Newark, New Jersey. Credit Pros conducts business nationwide, including in this District.

5.      Jason Kaplan ("Kaplan") is the President of Credit Pros. Kaplan resides in New Jersey.

## FACTUAL ALLEGATIONS

6.      Like most Americans, Champion has a mobile residential telephone.

7.      Champion is the subscriber and user of the mobile phone number 202-492-0336 since at least June 11, 2019.

8.      Champion uses this number only for personal use and does not use it in any business.

9.      Being mobile, Champion takes this phone everywhere. Champion uses this phone to receive and make important calls, to get emergency information, and to receive and send text messages to family members and friends. Champion uses this phone regularly for personal enjoyment.

10.      On June 11, 2019, Champion registered his number on the National Do Not Call Registry ("DNCR") to eliminate the harassment and invasion of privacy from unauthorized telephone solicitations, yet he received 56 text messages within a 12-month period from Credit Pros and Kaplan.

11.      Champion's privacy and phone have been invaded by the non-emergency telemarketing text messages from Credit Pros and Kaplan.

12.     Champion has no relationship with Defendants, has no account with Defendants, has never provided any phone number to Defendants, and has never consented to Defendants sending any type of communication.

13.     Defendants have blasted text messages to Champion without caring if consent was obtained or if he was on the DNCR.

14.     Champion is not the only person Defendants have harassed with text messages. Credit Pros has been sued multiple times in the last few years for sending telephone spam to people on the DNCR.

15.     The first text came to Champion 15 months after he obtained and started using his number 202-492-0336.

16.     Credit Pros knowingly and willfully texted Champion at least 56 separate times as follows:

    i.     On October 16, 2020 at 06:37 PM UTC from (406) 797-5438:

           Adam we took 4 minutes talking 2 these guys 225-612-0719 6 weeks after my score went up 40 points


    ii.    On October 19, 2020 at 04:02 PM UTC from (931) 903-2467:

           Adam we spent 4 mins chatting to them 253-534-8812 a month later my score increased 30 points


    iii.   On October 19, 2020 at 06:22 PM UTC from (402) 696-6064:

           Adam I took 3 mins speaking 2 these guys 253-534-8836 30 days after our score jumped 39 points

iv.    On October 19, 2020 at 07:12 PM UTC from (573) 595-5868:

Adam ring us up today 2 increase bring up ur FICO rating 404-777-6892 no

obligation conversation

v.    On October 21, 2020 at 03:29 PM UTC from (940) 286-2462:

Adam a month ago I was almost bankrupt 571-382-6523 today my credit score is

816

vi.    On October 21, 2020 at 05:07 PM UTC from (970) 784-4977:

Adam My FICO number is 766 cause of this firm 707-771-2010  no risk. Give

them a call now

vii.    On October 21, 2020 at 07:19 PM UTC from (401) 468-0834:

Adam call now 2 increase bring up ur credit rating 702-829-6794 no obligation

conversation

viii.    On October 22, 2020 at 02:56 PM UTC from (505) 805-8862:

Adam just a single conversation is all that was needed 838-201-3661 they

improved my FICO score 76 pts

ix.    On October 23, 2020 at 07:09 PM UTC from (870) 888-5424:

Adam 8 weeks ago I was nearly chapter 11 323-970-2054 today my FICO score is

767

x.    On October 26, 2020 at 02:47 PM UTC from (934) 470-1284:

Adam 45 days ago my FICO was 619 today it is 730 thanks to them 619-241-

4983

xi.     On October 26, 2020 at 03:57 PM UTC from (864) 977-4445:

Adam 12 weeks ago my credit score was 582 now it is 762 becasue of them 657-232-7729

xii.    On October 26, 2020 at 04:10 PM UTC from (336) 933-6016:

Adam 2 months back my credit score was 600 today it's 721 thanks to them 205-545-5214

xiii.   On October 27, 2020 at 03:44 PM UTC from (402) 524-5059:

Adam my records indicate you need some help with your FICO score 480-470-5200 Let us to fix that

xiv.    On October 29, 2020 at 02:17 PM UTC from (315) 990-8396:

Adam Do u happen to know how to boost your FICO grade? 872-248-5574 this firm will explain

xv.     On October 29, 2020 at 03:28 PM UTC from (304) 773-3656:

Adam Do u happen to know the way to improve your FICO Score? 769-201-1598 this firm have proven they do

xvi.    On October 30, 2020 at 04:54 PM UTC from (205) 984-3741:

Adam It's really much better having an excellect credit score 502-515-6527 here is how I got it

xvii.   On November 03, 2020 at 04:16 PM UTC from (302) 721-1386:

Adam Give us a call to learn how to improve your FICO rating 404-777-9165 no credit check

xviii.      On November 03, 2020 at 05:01 PM UTC from (573) 691-4065:

Adam Give them a call to hear how you can improve your credit rating 918-265-0596 guaranteed

xix.      On November 03, 2020 at 05:31 PM UTC from (505) 758-8540:

Adam we are ready 2 assist u 614-505-2869 1 quick call 2 better your FICO history

xx.      On November 03, 2020 at 09:05 PM UTC from (980) 334-8237:

Adam we are ready 2 help u 512-714-3682 one snappy call 2 improve ur crdt rating

xxi.      On November 04, 2020 at 03:48 PM UTC from (302) 522-1596:

Adam our records show u require some aid with your FICO history 501-509-3975 Let us 2 fix that

xxii.      On November 04, 2020 at 04:21 PM UTC from (260) 692-9783:

Adam 30 days back my FICO was 589 today it is 796 all cause of them 205-545-5214

xxiii.      On November 06, 2020 at 06:39 PM UTC from (206) 558-6635:

Adam You have earned premium medical ins. 580-417-8039 this team will get it for you

xxiv.      On November 10, 2020 at 04:14 PM UTC from (302) 488-5218: Adam 45 days back my FICO was 616 now it is 778 becasue of them 2242919357 let them help you

xxv.    On November 10, 2020 at 04:17 PM UTC from (325) 853-8886:

Adam 6 weeks ago my FICO was 622 now it's 794 all cause of them 2624652752

Give them a call


xxvi.   On November 10, 2020 at 06:55 PM UTC from (507) 870-8413:

Adam 2 months back my credit score was 580 now it's 772 thanks to them

2293217894 let them help you


xxvii.  On November 10, 2020 at 07:34 PM UTC from (231) 787-8687:

Adam 2 months back my credit score was 613 today it is 760 becasue of them

2342305315 Call them now


xxviii. On November 12, 2020 at 05:27 PM UTC from (254) 651-3905:

Adam talk to us by Nov 12, 2020 4 immediate results on improving ur CRDT

number 3312599710


xxix.   On November 24, 2020 at 04:46 PM UTC from (854) 666-3451:

Adam I talked to this firm a few months back,  8315343010 They improved my

credit score by 166 pts.  They can help u 2.


xxx.    On November 24, 2020 at 05:21 PM UTC from (804) 964-0616:

Adam we talked to these guys a couple mths back,  8623296849 They improved

our credit rating by 178 pts.  They can help u 2.


xxxi.   On November 25, 2020 at 03:41 PM UTC from (352) 658-2581:

Adam we're available to talk you thru how improving your score 150 pts is

possible. call them 7087228975

xxxii.   On November 27, 2020 at 03:51 PM UTC from (507) 953-3737:

We have aided hundreds thousands like similar to u in bringing up their fico

rating 7542554045 call them to find out ur options

xxxiii.   On November 27, 2020 at 07:39 PM UTC from (908) 921-1654:

Adam we talked to their team a few mths ago,  8065451202 They brought up my

FICO score by 175 pts.  They can help you 2.

xxxiv.   On November 30, 2020 at 06:06 PM UTC from (743) 223-3802:

Adam you've got 2 talk to them 3512051340 ur FICO Score will thank you

xxxv.   On December 01, 2020 at 05:17 PM UTC from (918) 957-8532:

Adam u do not need to be defined by bad fico score 7327979376 We could aid

xxxvi.   On December 01, 2020 at 06:37 PM UTC from (931) 914-0220:

Adam u do not have 2 be held back cause of poor fico score 5139821511 They

will assist

xxxvii.   On December 03, 2020 at 08:42 PM UTC from (479) 379-8675:

Adam they're able to chat to you in regards to ur FICO score 5802655440

xxxviii.   On December 04, 2020 at 03:32 PM UTC from (848) 312-2289:

Adam we have been expecting your call. Our agents r here 2 improve ur FICO

7063976918

xxxix.  On December 04, 2020 at 03:58 PM UTC from (205) 896-6651:
Adam Your Credit history would benefit from some love 4705411516 allow me explain it.  Go ahead and call us now.

xl.  On December 04, 2020 at 05:12 PM UTC from (606) 772-4772: Adam your FICO Score looks very 2020!!  262-465-2754 Bring it up 4 2021

xli.  On December 07, 2020 at 05:53 PM UTC from (970) 478-3329:
Adam phoning now could increase ur FICO Score by 71 pts 7862260398

xlii.  On December 07, 2020 at 06:17 PM UTC from (860) 934-0785:
Adam calling today can boost ur credit rating by 87 points 8043159575

xliii.  On December 07, 2020 at 06:33 PM UTC from (531) 800-5684:
Adam phoning right away can raise your FICO Score by 70 pts 7404433264

xliv.  On December 08, 2020 at 05:13 PM UTC from (302) 488-5158:
Adam you have got nothing to lose  from talking to them 5174588751 howeber your FICO score has a lot to gain

xlv.  On December 11, 2020 at 04:48 PM UTC from (712) 371-5377:
Adam you don't shouldn't have 2 B held back cause of bad fico score 8134922716 We can help

xlvi.  On December 11, 2020 at 06:54 PM UTC from (231) 928-8504:
Adam start 2021 on a credit improvement adventure 8655686074 chat with our team now

xlvii.    On December 14, 2020 at 05:02 PM UTC from (302) 532-6868:

Adam Chat with us today 2 boost ur credit history 3606343936 0 obligation

xlviii.    On December 14, 2020 at 08:16 PM UTC from (701) 829-4925:

Adam U have gotta talk to them 9713089685 your CRDT history will appreciate it

xlix.    On December 16, 2020 at 04:49 PM UTC from (802) 553-3423:

Adam Let us 2 undo the harmful affects of 2020 to ur credit history 2024920336 4402945975

l.    On December 16, 2020 at 04:56 PM UTC from (712) 315-7780:

Adam Allow us 2 fix the damage done by 20 20 2 your CRDT rating 2024920336 6182276550

li.    On December 16, 2020 at 06:04 PM UTC from (304) 999-4210:

Adam this year has been tough 9104278447 if your CRDT score got hit they can fix it

lii.    On December 22, 2020 at 09:24 PM UTC from (928) 597-7171:

Adam talk to us ASPA to boost ur crdt rating in just 60 days 2192591004

liii.    On December 29, 2020 at 03:31 PM UTC from (531) 251-2715:

Adam things like deliquent payments can B harmful on your reports 7633015470 allow us 2 aid

liv.     On December 29, 2020 at 03:52 PM UTC from (507) 868-6560:

Adam We wanted 2 get a property but kept getting denied 7342283712 These guys helped me increase my Score

lv.     On January 05, 2021 at 06:10 PM UTC from (304) 996-6238:

Adam begin 2 0 2 1 with a credit improvement journey 3044037938 chat with our team now

lvi.     On January 15, 2021 at 04:18 PM UTC from (681) 892-8130:

Adam appologies 4 not getting to your call phone call 8176622292 I'm sure ur time is valuable

17.     The text messages contained a different phone number in the body of each message. When the phone numbers contained in the body of the text messages were called back, a sales representative from Credit Pros answered, indicating the text messages were sent by Credit Pros.

18.     These text messages were sent for the purpose of encouraging the purchase of credit repair services, which is the service that Credit Pros provides.

19.     The text messages called Joshua Champion by the name of Adam. However, Champion has never gone by the name of Adam and has never used the name Adam.

20.     These 56 text messages came from 56 different phone numbers. A legitimate telemarketer with consent would not send texts from different numbers each time. Credit Pros sent the text messages from random numbers to prevent the Champion from blocking future text messages. Credit Pros knowingly used and cycled through dozens and dozens of phone numbers to avoid getting blocked.

21.     Additionally, Credit pros went to great lengths to hide their identity in the text messages to avoid liability under the TCPA. The text messages did not disclose the name of

person sending the text messages or the name of the entity on whose behalf the text messages were sent.

22.    The text messages were sent using an Automatic Telephone Dialing System ("ATDS") based on the following facts:

i.    Champion never provided his phone number to Defendants, which means Champion's number was randomly generated, obtained, and stored. There was no basis to have his number on any list that was dialed, and he could not have been targeted.

ii.    Champion has no relationship with Defendants, has no account with Defendants, has never provided any phone number to Defendants, and has never consented to Defendants sending any type of communication.

iii.    Champion has never gone by the name Adam, suggesting the feigned "personalization" was randomly generated.

iv.    If Credit Pros did in fact have consent to be messaging someone by the name of Adam, Credit Pros would have disclosed their company name in the text messages and Credit Pros would not have used 56 different phone numbers. Thus, Champion's number was randomly produced.

v.    Champion had his phone number for over 15 months before he received the first text. Credit Pros had no idea who they were dialing.

vi.    Champion received many messages the same day even though he had not responded to any of the messages. For instance, he received 2 messages within 3 minutes on 11-10-20. This is highly indicative of an autodialed text. On that day he received 4 total messages in a short time.

vii.    He received three messages with a few hours of each other on 10-19-20, 10-21-20, and 10-26-20.  Again, this shows that the messages were sent automatically as there was no reason to send him that many messages on the same day.

    viii.    Many of the message that were sent back-to-back on 11-3-2020, 11-10-2020 and 12-1-2020 were virtually identical and sent less than an hour apart; and

    ix.    Clearly some type of automated system was used based on the high volume of text messages and the fact that each text came from a different phone number.

23.    Kaplan is the President of Credit Pros, and personally runs, authorizes, and oversees the telephone marketing. This is based on the facts that:

    i.    Kaplan is the face of Credit Pros' marketing;

    ii.    In at least one marketing video, Kaplan tells potential clients "Instead of taking money from you, all I want is your contacts."—offering people free services if they give contact information for three (3) people. Upon information and belief, Credit Pros, with approval from Kaplan, sends unsolicited telemarketing calls to those contacts.

    iii.    Kaplan acts as Credit Pros Chief Compliance Officer. Upon information and belief, in this role, he reviews and approves all marketing by Credit Pros;

    iv.    Kaplan is specifically responsible for all Credit Pros compliance with state and federal laws; and

    v.    Kaplan failed to ensure marketing efforts by Credit Pros complied with the TCPA despite receiving multiple lawsuits against Credit Pros alleging non-compliance.

24.    These text messages have caused Champion frustration, stress, anxiety, and worry about scammers. The calls hinder Champion from determining the purpose of the call, from making a do-not-call request, and from monitoring compliance with the TCPA rules. The calls cause Champion to avoid looking at his phones when it may be important. The calls reduce the storage and battery life on Champion's phone. The calls dimmish the value of Champion's phone and Champion's enjoyment of life. In short, the calls invade Champion's privacy and cause a nuisance, an annoyance, and an intrusion into Champion's seclusion.

25.    On information and belief, Credit Pros has sent text messages like these to thousands of people who never provided their information to Credit Pros.

## LEGAL STANDARD

26.     **Autodialed Calls**. The TCPA provides that no person or entity shall make a call "using an automatic telephone dialing system or an artificial or prerecorded voice… [t]o any… cellular telephone" unless the call is "made for emergency purposes or made with the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii); see also 47 C.F.R. § 64.1200(a)(1). If the call "introduces an advertisement or constitutes telemarketing" then "prior express written consent" is required. 47 C.F.R. § 64.1200(a)(2).

27.     **Do Not Call Registry**. Residential telephone subscribers who do not want to receive telephone solicitations may place their phone number on the DNCR. 47 C.F.R. § 64.1200(c). The TCPA proscribes callers from making "any telephone solicitation to… [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2).

28.     **Failure to Identify Caller**. The TCPA prohibits callers from telemarketing to a residential telephone subscriber without disclosing the name of the individual caller and the name of the person or entity on whose behalf the call is being made. 47 C.F.R. § 64.1200(d)(4).

29.     **Text message are calls**. Both phone calls and text messages qualify as a "call" under the TCPA. *Satterfield v. Simon Schuster*, 569 F.3d 946, 954 (9th Cir. 2009).

30.     **Personal Liability**. "A corporate officer can be personally liable if he 'actually committed the conduct that violated the TCPA, and/or [he] actively oversaw and directed this conduct.'" *City Select Auto Sales Inc. v. David Randall Assocs.*, 855 F.3d 154, 162 (3d Cir. 2018).

## CLASS ACTION ALLEGATIONS

31.     Pursuant to Civ. R. 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself, and three Classes of persons similarly situated in order to remedy the ongoing unlawful business practices alleged herein and to seek redress on behalf of all those persons who have been harmed thereby, including injunctive relief.

32.     Class Definitions. Plaintiff proposes the following Classes:

**The Automated Calls Class**
All people in the United States who (1) within four years prior to the filing of this action thought the date of certification, (2) Defendants sent a text message to their cellular telephone, (3) using the same equipment or type of equipment utilized to send text messages to Plaintiff.

**The Do Not Call Class**
All people in the United States who (1) within the four years prior to the filing of this action thought the date of certification, (2) Defendants sent more than one telephone solicitation via text message within any 12-month period, (3) to their residential cellular telephone number, (4) while listed on the national Do Not Call Registry.

**The Failure To Identify Class**
All people in the United States (1) who within four years prior to the filing of this action thought the date of certification, (2)  Defendants sent more than one telemarketing text message within any 12-month period, (3) to their residential cellular telephone number, (4) where the text message did not disclose the identity of the individual caller and the identity of the entity on whose behalf the call was made like the message sent to Plaintiff.

33.　　A member of a class may sue as a representative party if the member satisfies Federal Rule of Civil Procedure 23(a)'s four prerequisites: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a).

34.　　If Rule 23(a) is satisfied, a putative class representative must also show that the class is ascertainable and falls into one of three categories under Rule 23(b). Fed. R. Civ. P. 23(b). For a Rule 23(b)(3) class, a plaintiff must make two further showings. First, a plaintiff must show that questions of law or fact common to class members predominate over any questions affecting only individual class members. *Id*. Second, a plaintiff must demonstrate class action is superior to other available methods for adjudicating the controversy.

35.　　**Numerosity**. A proposed class satisfies the numerosity requirement if class members are so numerous that joinder of all members would be impracticable. Fed. R. Civ. P. 23(a)(1). The numerosity requirement is not tied to any fixed numerical threshold. In general, courts find the numerosity requirement satisfied when a class includes at least 40 members.

Here, the Classes are so numerous that joinder of all members would be impracticable. The exact number will be determined from defendants' business records but is expected to be in the thousands.

36.     **Commonality**.  A proposed class satisfies Rule 23's commonality requirement if there is at least one question of fact or law common to the class. Fed. R. Civ. P. 23(a)(2). It is not a high standard. The claims must depend upon a common contention such that the determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke. The Supreme Court has said the word question in Rule 23(a)(2) is a misnomer: What matters to class certification is not the raising of common questions but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation.

37.     There are questions of law and fact common to the proposed Classes. These questions include, inter alia:

    i.    Did they receive a text from Credit Pros?

    ii.    Was the number texted registered on the Do Not Call Registry?

    iii.    Did Defendants use an Automatic Telephone Dialing System ("ATDS")?

    iv.    Were the text messages for an emergency purpose?

    v.    Did the text messages properly identify the sender?

    vi.    Were the actions willful or knowing?

38.     **Typicality**. A proposed class representative's claims and defenses must also be typical of the class. Fed. R. Civ. P. 23(a)(3). The Supreme Court has recognized that the commonality and typicality requirements of Rule 23(a) tend to merge. Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose, or the relief sought. Representative claims are typical if they arise from the same claims as other class members.

39.     Plaintiff's claims herein are typical of those of the Classes he seeks to represent. Plaintiff's and the Class members claims arise from the same conduct of Defendants: text

messages sent to people on the DNC registry, failure to identify the sender, or texts sent using an ATDS without express written consent.

40.     **Adequacy of Representation**. The final prerequisite under Rule 23(a) requires that the Court must be satisfied that the representative party will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). This overlaps in practice with the requirement under Rule 23(g) that class counsel must adequately represent the interests of the class. Fed. R. Civ. P. 23(g). The inquiry under Rule 23(a)(4) asks two questions: (1) Does the representative plaintiff and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiff and their counsel prosecute the action vigorously on behalf of the class? Plaintiff is an adequate representative of the Classes because his interests are common with the interests of the Classes, and he will fairly and adequately protect the interests of the Classes by pursuing this matter. Plaintiff is represented by counsel competent and experienced in TCPA and class action litigation.

41.     **Ascertainability and Predominance of Common Questions and Superiority**. The class must be ascertainable and be defined by objective criteria. The class is determinable from Defendants records based on the criteria of 2 texts sent to parties who are on the Do Not Call Registry, who received texts that were sent using the same system as those sent to Plaintiff, and who received texts without proper identification of the sender. A plaintiff may bring a class action under Rule 23(b)(3) only where questions of law or fact common to the class predominate over questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). If liability can be determined at a class-wide basis, common issues predominate. This is true even if, at the damages stage, there remain non-injured class members and individualized damages calculations are required. The final determination a court must make to certify a Rule 23(b)(3) class is that class action would be superior to individual actions in fairly and efficiently resolving the claims presented in this matter. Rule 23 enumerates four factors pertinent to determining whether class action is the superior method of litigation. First, the class members' interests in individually controlling the prosecution or defense of separate actions. Fed. R. Civ. P. 23(b)(3)(A). Second,

the extent and nature of any litigation concerning the controversy already begun by or against class members. Fed. R. Civ. P. 23(b)(3)(B). Third, the desirability or undesirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3)(C). Finally, the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(D). Where class wide litigation will reduce litigation costs and promote greater efficiency, a class action may be the superior method of litigation.

42.     The questions of law and fact common to the class members predominate over questions affecting only individual members. A class action is superior to multiple individual suits because it conserves judicial resources, promotes consistency and efficiency of adjudication, and deters illegal activities. The interest of individual members of the Classes in individually controlling the prosecution of separate claims against Defendants are small because the damages in an individual action for violation of the TCPA are small. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

43.     Managing this case as a class action should have no significant difficulties. The law applicable to each putative class member is identical. The facts are too. Ultimately, the basic questions in this case are the same for all class members. For The Automated Calls Class: Did Defendants text a putative class member without authorization using an ATDS?  For the DNC Class the question for all members is: Did Defendants text a putative class member who was registered on the DNC registry? For the Failure to Identify Class, the question for all members is: Did Defendants properly identify themselves in the text message? The common answer to these questions will determine Defendants liability. Precedent demonstrates these questions can be litigated on a class wide basis.

## FIRST CAUSE OF ACTION

### Violations of 47 U.S.C. § 227(b) & 47 C.F.R. 64.1200(a)(1)-(2)

### (On Behalf of Plaintiff and the Automated Calls Class)

44.     Defendants' use of an ATDS to contact Plaintiff and members of the Automated Calls Class violated 47 U.S.C. § 227(b) and 47 C.F.R. 64.1200(a)(1)-(2).

45.     As a result, Plaintiff and members of the Automated Calls Class have been damaged and are entitled to an award of $500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

46.     Because the violations were knowingly and willfully, the court should award $1,500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(b)(3)(B)-(C).

47.     Plaintiff and members of the Automated Calls Class are also entitled to injunctive relief prohibiting Defendants from using an ATDS when sending telemarketing text messages without the prior express written consent of the called party.

## SECOND CAUSE OF ACTION

### Violations of 47 U.S.C. § 227(c) & 47 C.F.R. § 64.1200(c)(2)

### (On Behalf of Plaintiff and the Do Not Call Class)

48.     Defendants' sending more than one telephone solicitation via text message to the residential cellular telephones of Plaintiff, and to members of the Do Not Call Class, within a 12-month period, while on the National Do Not Call Registry constitutes a violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2).

49.     As a result of the violation of 47 C.F.R. § 64.1200(c)(2), Plaintiff and members of the Do Not Call Class have been damaged and are entitled to an award of $500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

50.     Because the violations were knowingly and willfully, the court should award $1,500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(c)(5)(B)-(C).

51.     Plaintiff and members of the Do Not Call Class are also entitled to and seek injunctive relief prohibiting Defendants from sending telephone solicitations via text messages to phone numbers on the DNCR.

### THIRD CAUSE OF ACTION

### Violations of 47 U.S.C. § 227(c) & 47 C.F.R. § 64.1200(d)(4)

### (On Behalf of Plaintiff and the Failure To Identify Class)

52.     Defendants' sending of telemarketing text messages to the residential cellular telephones of Plaintiff, and members of the Failure To Identify Class, without disclosing the identity of the individual and identity of the entity on whose behalf the messages are sent, constitutes a violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d)(4).

53.     As a result of the violations of 47 C.F.R. § 64.1200(d)(4), Plaintiff and members of the Failure To Identify Class have been damaged and are entitled to an award of $500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

54.     Because the violations were knowingly and willfully, the court should award $1,500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(c)(5)(B)-(C).

55.     Plaintiff and members of the Failure To Identify Class are also entitled to and seek injunctive relief requiring Defendants to disclose the name of the actual individual and the actual name of the incorporated entity on whose behalf any text messages are sent when telemarketing.

### RELIEF REQUESTED

Plaintiff respectfully request that the Court grant Plaintiff and all Class members the following relief against Defendant:

   i.   Certification of the proposed Classes;

   ii.   Appointment of Plaintiff as class representatives;

   iii.   Appointment of the undersigned as counsel for the Classes;

   iv.   An order enjoining Defendants from using an ATDS when sending telemarketing text messages without the consent of the called party;

v.   An order enjoining Defendants from sending telephone solicitations via text messages to phone numbers on the DNCR;

vi.   An order requiring Defendants to disclose the actual name of the individual as well as the actual name of the incorporated entity on whose behalf any text messages are sent when telemarketing;

vii.   An award of damages to Plaintiff and the Classes, as allowed by law; and

viii.   Orders granting such other relief as the Court deems necessary, just, and proper.

### JURY DEMAND

Plaintiff requests a jury trial as to all claims of the Complaint so triable.

Dated: August 15, 2022

Respectfully Submitted,

/s/ *Anna Badalian*
Anna Badalian
LawHQ, P.C.
299 S. Main St. #1300
Salt Lake City, UT 84111
385-285-1090
anna.badalian@lawhq.com

*Attorney for Plaintiff*