UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JOSHUA CHAMPION, | : | Civil Action No. 21-10814 (JXN) (JBC) |
| Plaintiff, | : | |
| | : | OPINION |
| v. | : | |
| | : | |
| THE CREDIT PROS INTERNATIONAL CORPORATION, *et al* | : | |
| Defendants, | : | |

**NEALS**, District Judge:

This matter comes before the Court on the motion to dismiss [ECF No. 18] filed by the Credit Pros International Corporation ("Credit Pros") and Jason Kaplan ("Mr. Kaplan") (collectively, the "Defendants"), to which an opposition [ECF No. 21] was filed by Joshua Champion ("Plaintiff"). Previously, the Court dismissed the Complaint and granted leave to amend [ECF No. 9] based on the parties' submissions [ECF Nos. 6-7]. The present motion concerns the Amended Complaint.[1] For the reasons stated herein, the motion to dismiss [ECF No. 18] is **DENIED**.

I.     BACKGROUND

Credit Pros is a business organized and headquartered in New Jersey whose President, Mr. Kaplan, also resides in New Jersey. Am. Compl., ECF No. 12 at 2. Plaintiff is a consumer who alleges that he registered his number on the National Do Not Call Registry ("DNCR") and then received fifty-six text messages within a twelve-month period from Defendants. *Id.* According to Plaintiff, the text messages

---

[1] The present motion is decided without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). Jurisdiction is proper pursuant to 28 U.S.C. § 1331 and venue is proper pursuant to 28 U.S.C. § 1391.

from Defendants invaded his privacy, amounted to harassment, and caused "a nuisance, an annoyance, and an intrusion into [his] seclusion." *Id.* at 2-3, 13. Plaintiff alleges that Defendants violated the Telephone Consumer Protection Act ("TCPA") and that he is entitled to relief under 47 U.S.C. § 227(b)(3) and 47 U.S.C. § 227(c)(5). *Id.* at 19-20.

Initially, Plaintiff brought two causes of action under the TCPA. Compl., ECF No. 1 at 6-7. The first cause of action, brought under 47 U.S.C. § 227(b)(3), alleged that Defendants used an automatic telephone dialing system ("ATDS") in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(1). *Id.* at 5-6. The second cause of action, brought under 47 U.S.C. § 227(c)(5), alleged that Defendants contacted a number on the DNCR in violation of 47 C.F.R. § 64.1200(c), or alternatively, that Defendants failed to follow requisite procedures in violation of 47 C.F.R. 64.1200(d). *Id.* at 7. Plaintiff sought damages for negligent, knowing, and willful violations of the TCPA, as well as injunctive relief. *Id.* at 6-7.

The Court dismissed the Complaint. ECF No. 9. Although the Court found that Plaintiff sufficiently alleged Mr. Kaplan's involvement in Credit Pro's text messages, it concluded that Plaintiff failed to plead Defendants' use of an ATDS. ECF No. 8 at 6-9. Since Plaintiff failed to plead the conduct required for the first cause of action, the Court did not reach the sufficiency of the allegations concerning the second cause of action. *Id.* at 9 n.2. Likewise, the Court did not reach the sufficiency of the allegations concerning Defendants' negligence, knowledge, or willfulness. Ultimately, the Court granted leave to amend to cure the pleading deficiencies. ECF No. 9.

In the Amended Complaint, Plaintiff provides more detailed factual allegations. *Compare* Am. Compl., ECF No. 12 at 3-13, *with* Compl., ECF No. 1 at 3-4. Plaintiff also offers an additional category of allegations related to the certification of a putative class. Am. Compl., ECF No. 12 at 14-18. Moreover, Plaintiff offers an additional cause of action pursuant to 47 U.S.C. § 227(c)(5) and 47 C.F.R. 64.1200(d)

2

for Defendants' alleged failure to identify the individual or entity on whose behalf the text messages were sent. *Id.* at 20.[2]

Defendants moved to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). ECF No. 18. Plaintiff opposed the motion. ECF No. 21. The matter is ripe for the Court to decide.

## II.     LEGAL STANDARD

Pursuant to Rule 12(b)(6), the defendant may move to dismiss the complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering the motion, the court assumes the truth of the facts alleged and draws all reasonable inferences in favor of the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). However, the allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, the facts alleged "must be enough to raise a right to relief above the speculative level." *Id.* The complaint will only survive dismissal if it provides factual allegations that support a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Under this standard, the Third Circuit requires a three-part inquiry: (1) the court must recite the elements that are required under the relevant causes of action; (2) the court must ascertain the allegations in the complaint that are conclusory and unqualified for an assumption of truth; and (3) the court must assume the truth of the factual allegations in the complaint and assess the plausibility of the claims for relief. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). Ultimately, the complaint "must do more than allege the plaintiff's entitlement to relief"—it "has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

---

[2] The Court notes that Plaintiff only obtained leave to amend to cure the pleading deficiencies, not to add categories of allegations or causes of action. ECF No. 9. However, in the absence of objection from Defendants, the Court will permit the amendments.

### III.  DISCUSSION

Defendants move to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted.  ECF No. 18-1 at 6.  In support of their motion, Defendants argue that there are insufficient factual allegations to show that Credit Pros or Mr. Kaplan used an ATDS in violation of the TCPA.  *Id.* at 8-11.  Defendants further argue that there are no factual allegations to show that violation of the TCPA was knowing or willful or that Plaintiff is entitled to injunctive relief.  *Id.* at 12-13.  The Court addresses each argument in turn, against the backdrop of the TCPA.

#### A.  The TCPA

The TCPA prohibits a person from "using any automatic telephone dialing system" to make calls to any "cellular telephone service" without consent.  47 U.S.C. § 227(b)(1)(A)(iii); *see also* 47 C.F.R. § 64.1200(a)(1)(iii); 47 C.F.R. § 64.1200(a)(2).  Under the TCPA, a ATDS is a system that has "the capacity to use a random or sequential number generator to either store or produce phone numbers to be called." *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1173 (2021).  If a person uses an ATDS to call a cellular telephone service, then such person violates the TCPA, irrespective of whether the recipient is charged for the call.  *Susinno v. Work Out World Inc.*, 862 F.3d 346, 349 (3d Cir. 2017).  However, the person does not violate the TCPA if the ATDS' random or sequential number generation is not engaged in connection with the call.  *Panzarella v. Navient Sols., Inc.*, 37 F.4th 867, 881 (3d Cir. 2022).

Additionally, the TCPA empowers the Federal Communications Commission to promulgate regulations regarding "the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations[.]" 47 U.S.C. § 227(c)(3).  Pursuant to this authority, regulations prohibit a person from initiating a telephone solicitation to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry[.]"  47 C.F.R. § 64.1200(c)(2).  The regulations also prohibit a person from initiating a

telemarketing call to "a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls[.]" 47 C.F.R. § 64.1200(d). Among other things, the person "must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted." 47 C.F.R. § 64.1200(d)(4).[3]

The TCPA provides private rights of action for use of an ATDS and for infringement of the regulations promulgated by the Federal Communications Commission. 47 U.S.C. § 227(b)(3); 47 U.S.C. § 227(c)(5). Under these private rights of action, the plaintiff may obtain an injunction, recover damages, or both. 47 U.S.C. § 227(b)(3)(A)-(C); 47 U.S.C. § 227(c)(5)(A)-(C). Moreover, any damages recovery may be increased threefold if the TCPA violation is knowing or willful on the part of the defendant. 47 U.S.C. § 227(b)(3); 47 U.S.C. § 227(c)(5). Although the TCPA references calls and telephone solicitations, the plaintiff is entitled to relief even if the defendant communicates through text message. *Dominguez on Behalf of Himself v. Yahoo, Inc.*, 894 F.3d 116, 118 (3d Cir. 2018).

i.  **Whether Defendants Used an ATDS in Violation of the TCPA**

Defendants argue that there are insufficient factual allegations to show that Credit Pros or Mr. Kaplan used an ATDS in violation of the TCPA. ECF No. 18-1 at 8-11. However, the facts alleged support a plausible claim for relief under the theory that Defendants used an ATDS. Moreover, even if Credit Pros and Mr. Kaplan did not use an ATDS, there are sufficient factual allegations to show that

---

[3] Although the regulations concern residential telephone subscribers, "[i]t is not required that a plaintiff provide extensive detail to state a plausible claim as to the residential character of his cell phone." *Atkinson v. Choice Home Warranty*, 2023 WL 166168, at *4 (D.N.J. Jan. 11, 2023) (citations omitted); *see also Susinno*, 862 F.3d at 349 ("Although it is true that the TCPA placed particular emphasis on intrusions upon the privacy of the home in 1991, this expression of particular concern for residential calls does not limit—either expressly or by implication—the statute's application to cell phone calls.").

Defendants violated the TCPA by contacting a number on the DNCR and by failing to identify the sender of the text messages.

As an initial matter, there are sufficient factual allegations to show that Defendants used an ATDS in violation of the TCPA. Plaintiff continues to allege that he received text messages addressed to someone named Adam, but that he "has never gone by the name Adam[.]" Am. Compl., ECF No. 12 at 13; *see also* Compl., ECF No. 1 at 3. In response, Defendants argue that the alleged text messages likely were addressed to Adam because the texts "were sent to numbers from pre-loaded lists" that had been assigned to that name. ECF No. 18-1 at 10; *see also* ECF No. 8 at 8. However, Plaintiff now alleges that he "had his phone number for over 15 months before he received the first text." Am. Compl., ECF No. 12 at 12. If a pre-loaded list had assigned the number to someone named Adam, then Defendants likely would have sent Plaintiff a text during the first fifteen months.[4] And even if there is a "reasonable inference" that the number was assigned in a pre-loaded list, "simply presenting an alternative explanation for the facts alleged in the [Amended] Complaint does not mean the [Amended] Complaint fails to plausibly state a claim at this stage." *Zemel v. CSC Holdings LLC*, 2018 WL 6242484, at *4 (D.N.J. Nov. 29, 2018). In other words, there is at least a plausible inference that Defendants used an ATDS to send the text messages, especially since Plaintiff "never provided his phone number" and "has no relationship" to Credit Pros or Mr. Kaplan. Am. Compl., ECF No. 12 at 12.

The inference that Defendants used an ATDS is further supported by additional factual allegations. For instance, Plaintiff continues to allege that he received a "high volume of text messages" and that "each

---

[4] Plaintiff also alleges that if consent had been obtained from Adam, then "Credit Pros would have disclosed their company name in the text messages and Credit Pros would not have used 56 different phone numbers." Am. Compl., ECF No. 12 at 12. These allegations suggest that Defendants did not obtain consent to send the text messages. *See infra* Section III.C. However, these allegations do not rebut the argument that a pre-loaded list had assigned the number to Adam (because the number could have been assigned without consent).

6

text came from a different phone number." Am. Compl., ECF No. 12 at 13; *see also* Compl., ECF No. 1 at 4. But Plaintiff now provides more factual detail for his allegations, outlining the fifty-six text messages and the many phone numbers associated with each text. Am. Compl., ECF No. 12 at 3-11. Plaintiff also alleges that he received each text "even though he had not responded to any of the messages." *Id.* at 12. These detailed factual allegations show that Plaintiff "received many messages the same day" throughout October, November, and December 2020; that Plaintiff "received three messages with[in] a few hours of each other" in October 2020; that Plaintiff received messages that were "sent less than an hour apart" in November and December 2020; and that many of these "back-to-back" messages "were virtually identical" to each other. *Id.* at 12-13.[5] Similarly, these allegations show that the text messages consistently included misspelled words, many of which were identical. *See id.* at 5-7 ("becasue"); *id.* at 4, 6-11 ("ur"). The alleged volume, frequency, proximity, similarity, and absence of response to the text messages raise a plausible inference that Defendants used an ATDS.[6]

Importantly, the cases cited by Defendants do not refute the sufficiency of the factual allegations. In *Trumper v. GE Capital Retail Bank*, "[t]he Amended Complaint sa[id] nothing about the calls [the plaintiff] received," except "that the calls were directed at Enid Gonzales, who apparently ha[d] an account with [the defendant]." 79 F. Supp. 3d 511, 513 (D.N.J. 2014). Likewise, in *Deleo v. National Republican Senatorial Committee*, the plaintiff did not "identify the specific content of the messages that raise[d] a reasonable inference an ATDS was used." 2021 WL 5083831, at *7 (D.N.J. Nov. 1, 2021). Here, Plaintiff has identified the specific content of the text messages and has offered no indication that Adam had an account with Defendants, even though the messages were directed to someone with that name. Thus, the

---

[5] Although Plaintiff previously alleged that "substantively identical text messages were sent to [him] multiple times[,]" he did not provide any factual detail. Compl., ECF No. 1 at 4.
[6] This inference is plausible even though the different phone numbers could suggest that the text messages were not automatic.

Amended Complaint raises a plausible inference that ATDS was used by Defendants. *See Todd v. Citibank*, 2017 WL 1502796, at *6 (D.N.J. Apr. 26, 2017) ("Plaintiff has plead[ed] more than just a 'bare-boned allegation' . . . ."); *see also Niemczyk v. Pro Custom Solar LLC*, 2022 WL 884359, at *3 (D.N.J. Mar. 25, 2022) ("Defendant[s] may seek to prove that [their] dialing technology does not use random or sequential number generators at trial; however, that is a factual issue to be explored in discovery, rather than an issue to be decided as a matter of law at this stage.").[7]

Additionally, there are sufficient factual allegations to show that Defendants violated the TCPA by contacting a number on the DNCR and by failing to identify the sender of the text messages. Plaintiff alleges that he registered a number on the DNCR in June 2019 and then received text messages to that number from October 2020 through January 2021. Am. Compl., ECF No. 12 at 2-11. Plaintiff also outlines each text message and alleges that "[t]he text messages did not disclose the name of the person sending the text messages or the name of the entity on whose behalf the text messages were sent." *Id*. at 3-12. Considering these factual allegations, the Amended Complaint raises a plausible inference that Defendants contacted a number on the DNCR and failed to identify the sender of the text messages.

Since there are sufficient factual allegations to show that Defendants used an ATDS, contacted a number on the DNCR, and failed to identify the sender of the text messages, Plaintiff has stated claims for relief under the TCPA. Specifically, Plaintiff has stated a claim for relief under 47 U.S.C. § 227(b)(3) for violation of 47 U.S.C. § 227(b)(1)(A)(iii), as well as claims for relief under 47 U.S.C. § 227(c)(5) for violation of 47 C.F.R. § 64.1200(c) and 47 C.F.R. 64.1200(d).

---

[7] The plaintiff in *Todd* alleged voluminous and frequent contacts from the defendant and the plaintiff in *Niemczyk* alleged no prior relationship with the defendant. *Todd*, 2017 WL 1502796, at *1; *Niemczyk*, 2022 WL 884359, at *1. Here too, Plaintiff has alleged voluminous and frequent contacts from, and no prior relationship with, Defendants. Am. Compl., ECF No. 12 at 3-12.

### ii. Whether Violation of the TCPA was Knowing or Willful

Defendants argue that there are no factual allegations to show that violation of the TCPA was knowing or willful. ECF No. 18-1 at 12. However, Plaintiff alleges that the "56 text messages came from 56 different phone numbers" because Defendants sought "to avoid getting blocked." Am. Compl., ECF No. 12 at 11. Moreover, the alleged text messages included misspelled words, which further indicates that Defendants sought to appear legitimate. *See id.* at 3-11. Similarly, Plaintiff alleges that Defendants "went to great lengths to hide their identity in the text messages to avoid liability under the TCPA." *Id.* Plainly, these factual allegations suggest awareness of wrongdoing.[8] Thus, Plaintiff has stated a claim for treble damages under 47 U.S.C. § 227(b)(3) and 47 U.S.C. § 227(c)(5) for knowing and willful violations of 47 U.S.C. § 227(b)(1)(A)(iii), 47 C.F.R. § 64.1200(a)(1), and 47 C.F.R. 64.1200(d).[9]

### iii. Whether Plaintiff is Entitled to Injunctive Relief

Defendants argue that there are no factual allegations to show that Plaintiff is entitled to injunctive relief. ECF No. 18-1 at 12-13. However, the standard cited by Defendants concerns a preliminary injunction. *See Constructors Ass'n of W. Pennsylvania v. Kreps*, 573 F.2d 811, 814 (3d Cir. 1978) ("The narrow issue before us is whether the district court abused its discretion in refusing to grant the preliminary injunction sought by the plaintiff."). Here, Plaintiff seeks injunctive relief under the TCPA, not a preliminary injunction. Since Plaintiff has stated claims for relief under the TCPA, no further showing is required. *See supra* Sections III.A.(i)-(ii).

---

[8] Additionally, Plaintiff alleges that he received dozens text messages within the span of three months despite offering no responses, which suggests that Defendants were more than negligent. Am. Compl., ECF No. 12 at 3-12; *see also Atkinson*, 2023 WL 166168, at *5 ("[T]he Complaint sufficiently alleges that Defendant acted willfully or knowingly in continuing to call Plaintiff despite her repeated indications that she did not wish to receive such calls."). The allegation that "Credit Pros has been sued multiple times in the last few years for sending telephone spam to people on the DNCR" also suggests that Defendants were more than negligent. Am. Compl., ECF No. 12 at 3.

[9] The Court has sustained a claim for treble damages with far fewer factual allegation. *See Zelma v. Penn LLC*, 2020 WL 278763, *6 (D.N.J. Jan. 17, 2020).

## IV.     CONCLUSION

For the reasons set forth above, the motion to dismiss [ECF No. 18] is **DENIED**. An appropriate Order accompanies this Opinion.

DATED: May 15, 2023

s/ Julien Xavier Neals
**JULIEN XAVIER NEALS**
United States District Judge